UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JANICE WILSON JONES,

                              Plaintiff,                              REPORT
                                                                        and
                    v.                                         RECOMMENDATION

NANCY A. BERRYHILL,[1] Commissioner of                    15-CV-00546V(F)
  Social Security,
                              Defendant.
_____

APPEARANCES:          LAW OFFICES OF KENNETH HILLER
                      Attorneys for Plaintiff
                      KENNETH R. HILLER, and
                      ELIZABETH ANN HAUNGS, of Counsel
                      6000 North Bailey Avenue
                      Suite 1A
                      Amherst, New York  14226

                      JAMES P. KENNEDY
                      UNITED STATES ATTORNEY
                      Attorney for Defendant
                      Federal Centre
                      138 Delaware Avenue
                      Buffalo, New York  14202
                              and
                      KRISTINA DANIELLE COHN, and
                      TOMASINA DiGRIGOLI
                      Special Assistant United States Attorney, of Counsel
                      United States Attorney's Office
                      c/o Social Security Administration
                      Office of General Counsel
                      26 Federal Plaza – Room 3904
                      New York, New York  10278

**<u>JURISDICTION</u>**

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017.  Pursuant to Fed.R.Civ.P. 25(d), Berryhill is substituted for Carolyn Colvin as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

On January 6, 2017, this action was referred to the undersigned for all pretrial matters including preparation of a report and recommendation on dispositive motions. The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on January 20, 2017 (Dkt. 13), and by Defendant on March 9, 2017 (Dkt. 14).[2]

## **BACKGROUND**

Plaintiff Janice Wilson Jones ("Plaintiff" or "Jones"), brings this action under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's applications for social security disability benefits filed with the Social Security Administration ("SSA"), on April 8, 2011, for Title II Disability Insurance benefits ("disability benefits").  In applying for disability benefits, Plaintiff alleges she became disabled on April 3, 2008, later amended to February 26, 2011, based on neck pain, depression, and right eye blindness.  AR[3] at 448-51, 530.  Plaintiff's application initially was denied July 1, 2011, AR at 207-18, and on August 1, 2011, Plaintiff requested an administrative hearing before an administrative law judge ("ALJ").  AR at 219-20.  The administrative hearing commenced on December 12, 2012, before ALJ Robert T. Harvey, but was adjourned when Plaintiff's counsel's request for a continuance to develop the record was granted. AR at 128-31.  When the hearing resumed on April 3, 2013 ("ALJ hearing"), both

---

[2] The court notes although Defendant asserts (Dkt. 16 at 1), the memorandum of law filed in opposition to Plaintiff's motion for judgment on the pleadings is also filed in support of Defendant's motion for judgment on the pleadings, Defendant never actually filed a notice of motion for judgment on the pleadings.
[3] References to "AR" are to the page of the Administrative Record electronically filed by Defendant in eight parts on October 7, 2016 (Dkt. 8-1 through 8-8).

Plaintiff, represented by Ida Comerford, Esq., and Vocational Expert ("VE") Esperanza DiStefano ("VE DiStefano"), appeared and testified.  AR at 81-127.   On April 15, 2013, the ALJ issued a decision denying Plaintiff's claim, AR at 182-92, which Plaintiff appealed to the Appeals Counsel.  AR at 366.  On August 15, 2014, the Appeals Council remanded the matter to the ALJ for evaluation of the treating, nontreating, and nonexamining source opinion, clarification of the extent to which Plaintiff's social functioning and concentration were limited, and further evaluation of Plaintiff's maximum residual functional capacity, with directions that the ALJ obtain further medical evidence as necessary for such considerations, as well as supplemental evidence from a vocational expert.  AR at 199-203.  Accordingly, a new hearing was held on January 7, 2015 ("remanded hearing"), at which Plaintiff, represented by Kenneth Hiller, Esq., appeared and testified along with VE David Seifert ("VE Seifert").  AR at 43-80.  On February 26, 2015, the ALJ issued another decision unfavorable to Plaintiff, AR at 17-22 ("the Hearing Decision"), which became the Commissioner's final decision on March 31, 2016, when the Appeals Council denied Plaintiff's request for review.  AR at 1-3.  On July 5, 2016, Plaintiff commenced the instant action seeking judicial review of the ALJ's February 26, 2015 decision.

On January 20, 2017, Plaintiff filed a motion for judgment on the pleadings (Dkt. 13) ("Plaintiffs' Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 13-1) ("Plaintiff's Memorandum").  On March 13, 2017, Defendant filed the Commissioner's Brief in Support of the Commissioner's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Standing Order on Social Security Cases (Dkt. 16) ("Defendant's

Memorandum").  On April 3, 2017, Plaintiff filed Plaintiff's Response to the

Commissioner's Brief in Further Support of Plaintiff's Motion for Judgment on the

Pleadings (Dkt. 17) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion seeking judgment on the pleadings

should be DENIED; Defendant's request for judgment on the pleadings should be

GRANTED.

## **FACTS**[4]

### 1.    **Education and Work History**

Plaintiff Janice Wilson Jones ("Plaintiff" or "Jones"), born May 22, 1970, was 44

years old when the remanded hearing was held on January 7, 2015.  AR at 520.

Plaintiff graduated from high school graduate, and a one-year beauty school program,

and completed three years of college.  AR at 531.  Plaintiff's relevant work experience

includes two years as a human resources assistant, and eleven years as a certified

nurse's aide ("CNA").  *Id.*

### 2.    **Orthopedic Impairments**

Plaintiff has not worked since April 3, 2008, when she was involved in a motor

vehicle accident ("the accident"), causing Plaintiff to lose consciousness and to sustain

neck, back, left hip and left knee injuries.  AR at 573-74, 588.  Following the accident,

Plaintiff was taken for spinal cord precautions by ambulance to the emergency room at

St. Joseph's Hospital in Cheektowaga, New York.  *Id.* at 574, 588.  Diagnostic tests on

April 26, 2008, included left knee X-rays showing "very mild osteoarthritis," AR. 590, left

---

[4] In the interest of judicial economy, recitation of the Facts is limited to only those facts necessary to decide the instant motion for judgment on the pleadings.

knee MRI showed small bony contusion at the superior pole of the patella, minimal knee joint effusion, and subcutaneous edema anterior to the left knee joint consistent with soft tissue contusion.  *Id.* at 591.

An August 11, 2008 MRI of Plaintiff's cervical spine showed reversal of the cervical spine's normal lordosis, disc bulges at C3-4, C4-5, and C6-7, herniated disc at C5-6, and annular tear at C6-7.  AR at 599.  Conservative treatment failed to improve Plaintiff's neck complaints and on May 18, 2009, orthopedic spinal surgeon Cameron B. Huckell, M.D. ("Dr. Cameron Huckell"), performed a complete discectomy with decompression, bilateral C5-6, and decompression, bilateral C6 nerve roots and spinal cord, and insertion of an artificial disc.  AR at 584.  Following the surgery, Plaintiff never reported more than 25% improvement in her neck symptoms.  AR at 809 (20% improvement), 1250 (25%).  At eleven subsequent examinations, Dr. Huckell repeatedly placed functional restrictions on Plaintiff, including that Plaintiff not sit, stand, or walk more than two hours at one time, not lift more than 35 lbs., and avoid bending, stooping, reaching, climbing, balancing, and over the shoulder work.  AR at 638 (October 6, 2009), 643 (January 5, 2010), 647 (July 6, 2010), 651 (October 5, 2010), 655-56 (April 5, 2011), 812 (May 12, 2011), 817 (June 30, 2011), 821 (December 1, 2011), 1021-22 (January 28, 2013), 1243 (October 10, 2013), and 1255-56 (October 24, 2013).

From January 11, 2011 through February 19, 2013, Plaintiff was treated on 20 occasions for back pain by her primary care physician, Michael D. Calabrese, M.D. ("Dr. Calabrese"), who diagnosed anxiety and depression, probable cervical disc displacement, cervical radiculitis, cervical, thoracic, and left knee sprain/strain, headache/post-traumatic concussion syndrome, left hip sprain/strain, post-traumatic

stress disorder, probable thoracic disc displacement/ herniation, and status post C5-6 artificial disc replacement, and determined Plaintiff was unable to return to work as a CNA.  AR 657-731, 1031-1201.  On March 6, 2012, Dr. Calabrese imposed on Plaintiff work restrictions including lifting no more than 10 lbs., daily driving limit of 1-2 hours, and avoiding repetitive bending, carrying, twisting, overhead reaching, pushing and pulling, AR at 1104, and the restrictions were continued on December 6, 2012, by Dr. Calabrese's associate, Cheryle R. Hart, M.D. ("Dr. Hart"), AR at 1173-74, who, on February 19, 2013, continued the restrictions and also found Plaintiff permanently partially disabled to a moderate degree based on the restrictions.  AR at 1201.

On February 3 and March 10, 2012, Plaintiff was treated for pain by Bernard Beaupin, M.D. ("Dr. Beaupin"), for complaints of cervical pain, radiculitis, left rotator cuff syndrome, and left carpal tunnel syndrome.  AR at 791-96.  Upon examination, Plaintiff had limited ROM of 50% in all directions for her cervical spine, and to 90° for her left shoulder, AR at 792, and Dr. Beaupin reported Plaintiff was disabled.  AR at 793, 795. A March 11, 2012 MRI of Plaintiff's left shoulder was suspicious for a Grade 1 SLAP tear, minimal sprain at the infraspinatus tendon with joint fluid and bursa fluid, minimal acromial joint arthrosis, and impingement.  AR at 797-98.  Plaintiff received further treatment for pain by Dr. Beaupin on May 10, July 24, September 24,and December 17, 2012, AR at 799-807, 1007-13, with Dr. Beaupin remarking on September 24, and December 17, 2012, that Plaintiff is disabled.  AR at 807, 1013.

On April 4, 2012, Plaintiff began treating with orthopedic surgeon A. Marc Tetro, M.D. ("Dr. Tetro"), for worsening pain when reaching with her left shoulder that was injured in the accident.  AR at 832.  Upon examination, Plaintiff had reduced range of

motion ("ROM"), and Dr. Tetro assessed left shoulder impingement syndrome, partial thickness rotator cuff tear, post-traumatic AC joint arthrosis, and glenoid labral tear, as well as cervical origin pain.  AR at 834.  Dr. Tetro administered an ultrasound-guided left shoulder glenohumeral joint and subacromial injection and opined Plaintiff was disabled with regard to her usual CNA occupation.  AR at 836-37.  The injection provided "significant but very temporary" pain relief, AR at 844, outpatient therapy did not improve her left shoulder pain, *id.*, described by Dr. Tetro on July 25, 2012 as "persistent and recalcitrant," and appearing to originate in part from Plaintiff's cervical spine.  AR at 849-51.  On August 13, 2012, Dr. Tetro performed surgical arthroscopic debridement, subacromial decompression, and distal clavicle excision on Plaintiff's left shoulder, AR at 856-58, with follow-up on August 24, 2012, and November 21, 2012, with Plaintiff attending physical therapy.  AR at 860-95.  Plaintiff saw Dr. Tetro in further follow-up on July 30, 2013, reporting her left shoulder pain and weakness that initially improved following surgery were gradually worsening.  AR 1347-50.  At examinations by Dr. Tetro on August 21, and 30, 2013, Plaintiff reported her left shoulder pain had returned.  AR at 1357-62.  On October 11, 2013, Plaintiff again complained her left shoulder pain had returned and Dr. Tetro diagnosed recurrent rotator cuff tendinitis with possible partial thickness tear for which corticosteroid injection provided only temporary relief.  AR at 1245-47.  At a December 4, 2013 follow-up, it was determined further surgical intervention was required for Plaintiff's left shoulder impairment, AR at 1261-65, and on January 27, 2014, Dr. Tetro performed on Plaintiff's left shoulder revision arthroscopic subacromial decompression with extensive arthroscopic debridement of a glenoid labral tear, biceps tendon debridement/tenotomy, lysis of adhesions and

coracoidplasty surgery.  AR at 1402-04.  At follow-up appointments on February 2 and March 21, 2014, Dr. Tetro reported Plaintiff was doing well and was to follow an outpatient range of motion therapy program.  AR at 1271-75, 1277-80.

### 3.    Vision Impairment

At age 9, Plaintiff lost vision in her right eye caused by a macular hole resulted from an automobile accident.  AR at 585, 742.  On March 25, 2011, Plaintiff was examined by ophthalmologist Surbhi Bansal, M.D. ("Dr. Bansal"), who diagnosed macular hole in Plaintiff's right eye with associated scarring, for which optical coherence tomography ("OCT"), was to be obtained, and advised Plaintiff take monocular precautions including polycarbonate lenses.  AR 586-87.  On April 26, 2011, Plaintiff was examined by James Simmons, OD ("Dr. Simmons") for a comprehensive low vision evaluation and complaints of worsening vision.  AR at 972-76.  On March 29, 2012, Plaintiff underwent another comprehensive low vision evaluation following which Dr. Simmons determined Plaintiff has a moderate to severe visual impairment not correctable by conventional refractive means, but with clear potential for significant functional improvement following rehabilitation within a reasonable period of time.  AR at 977-78.  On June 13, 2012, Plaintiff was examined by ophthalmologist Ausra Selvadurai, M.D. ("Dr. Selvadurai"), for complaints of blurry vision, both distance and near, watering, tearing, and itching eyes, and difficulty seeing to drive, and Plaintiff was given a prescription for new eyeglasses and advised to take monocular precautions.  AR at 955-57.

### 4.    Mental Impairment

Plaintiff, who is twice divorced, has a history of suffering from abuse including "significant domestic violence" from her second husband, and repeated rape attempts by her father and unidentified others. AR at 742. Plaintiff's psychiatric history includes the onset of mental illness in 1994 when Plaintiff was hospitalized for psychiatric reasons. AR at 742. On June 30, 2011, Plaintiff underwent an intake assessment at Kaleida Outpatient Behavioral Health, reporting the April 3, 2008 accident as "life-changing". AR at 741-49. Increased anxiety and depression rendered Plaintiff unable to comply with physical or other therapy, *id.* at 742, Plaintiff had fleeting suicidal thoughts but no intent or plan, AR at 743-44, her speech was verbose, tangential and pressured, AR at 744, and Plaintiff reported depression with tearfulness, labile mood, irritability, and hypomanic moods. AR at 745. Post-traumatic Stress Disorder ("PTSD") and bipolar disorder were diagnosed. AR at 745. On November 23, 2011, Plaintiff underwent a psychiatric consultation with Arvind Samant, M.D. ("Dr. Samant"), who reported Plaintiff was depressed and irritable, felt hopeless, had crying spells and difficulty concentrating, and constricted affect. AR at 963-64. Plaintiff continued to treat with Dr. Samant on December 21, 2011, January 18, 2012, March 14, 2012, and April 11, 2012, when Plaintiff's discharge summary indicates diagnoses of PTSD and histrionic personality disorder. AR at 958-70.

## 5.    Agency Opinions

On June 16, 2011, Plaintiff, in connection with her disability benefits application, underwent psychiatric and internal medicine evaluations. AR at 732-36 (psychiatric), and 737-40 (internal medicine). According to the psychiatric evaluation, performed by psychologist Sandra Jensen, Ph.D. ("Dr. Jensen"), Plaintiff reported significant

dysphoric moods, crying spells, irritability, suicidal thoughts, social withdrawal, and diminished sense of pleasure since the accident.  AR at 733.  Plaintiff was frustrated with her medical treatment, in constant pain, and unable to work, and showed deficits with short-term memory, concentration, and learning new material.  *Id.*  As a result of her injuries, Plaintiff was no longer able to engage in hobbies and interests such as working, roller-skating and bike riding, but spends her days crying, trying to read, and staring, although Plaintiff remained able to perform all activities of daily living with help and manage money, but was unable to drive.  AR at 734.  Dr. Jensen diagnosed adjustment disorder with depressed mood secondary to general medical condition, opining Plaintiff was mildly to moderately limited in making appropriate decisions, relating adequately with others, and appropriately dealing with stress, and with good prognosis if Plaintiff followed through with the recommended psychotherapy.  AR at 735.

The physical medical examination was performed by Samuel Balderman, M.D. ("Dr. Balderman"), who noted Plaintiff's chief complaint was neck pain and headaches. AR at 737.  Plaintiff appeared in no acute distress with normal gait, full squat, normal stance, used no assistive devices, required no help changing for the examination and getting on and off the examination table, but could not walk on heels or toes.  AR at 738.  Plaintiff's examination was largely unremarkable except for musculoskeletal where Plaintiff showed limited ROM of her cervical spine and left shoulder.  AR at 738-39.  Dr. Balderman diagnosed status post cervical spine surgery, and somatosensory disorder, with good prognosis, and mild limitations changing head position.  AR at 739.  Dr.

Balderman further reported Plaintiff "shows some symptom magnification during this evaluation." *Id*.

On July 18, 2011, a Psychiatric Review Technique was completed by state agency review psychologist T. Andrews, Ph.D. ("Dr. Andrews"), who reported Plaintiff had an adjustment disorder with depressed mood secondary to general medical condition. AR at 754-63. Plaintiff's adjustment disorder caused mild restrictions to activities of daily living, and maintaining social functioning, and moderate restrictions to maintaining concentration, persistence or pace, AR at 764, and Plaintiff was considered to have the capacity for substantial gainful employment with "low contact." AR at 766. On a Mental Residual Functional Capacity Assessment, Dr. Andrews indicated Plaintiff was moderately limited with regard to performing activities within a schedule, maintaining regular attendance,  being punctual within customary tolerances, working in coordination with or proximity to others without being distracted by them, completing a normal workday and workweek, appropriately interacting with the general public, accepting instructions and appropriately responding to criticism from supervisors, getting along with peers and coworkers, and setting realistic goals and making plans independently of others. AR at 767-69.

### 6.    Administrative Hearings

At the April 3, 2013 administrative hearing, Vocational Expert Esperanza DiStefano ("VE DiStefano"), appeared and testified that Plaintiff's past relevant work as a CNA was categorized in the Dictionary of Occupational Titles ("DOT") as medium work, but as performed by Plaintiff, particularly Plaintiff's testimony that she was required to lift, without assistance, patients weighing as much as 350 lbs., would qualify

as heavy work.  AR at 119.  According to VE DiStefano, CNA work was considered semiskilled requiring clerical skills to complete patient charts, and expressive and receptive communication skills, and all such skills were transferable to other jobs.  AR at 123.  VE DiStefano testified Plaintiff could, based on her limitations, perform a reduced range of sedentary work, including the jobs of information clerk, telephone solicitor, but could perform neither job, nor any other work if Plaintiff's impairments occasionally rendered her unable to maintain a regular work schedule.  AR at 123-26.

At the January 7, 2015 remand hearing, Plaintiff testified to increasing depression since the earlier hearing, that it is hard for her to do anything at all, and she mostly stays in her room, leaving only for physical therapy and doctor's appointments, especially since undergoing additional rotator cuff surgery in 2014, which resulted in ulnar nerve damage leaving Plaintiff with little to no use of her left arm.  AR at 53-55.  VE David Seifert ("VE Seifert"), appeared and testified that based on the transferable skills Plaintiff acquired in her past relevant work as a CNA, Plaintiff, despite being restricted to less than the full range of sedentary work, with lifting and carrying no more than five pounds, sit for six hours and stand or walk for two hours in an eight-hour day, unable to work with unprotected heights, around heavy, moving, dangerous machinery, to climb ropes, ladders or scaffolds, or to crawl, occasional limitations to bending, climbing, stooping, squatting, kneeling, balancing, reaching in all directions, handling, fingering, feeling, pushing and pulling with the upper extremities, maintaining attention and concentration for extended periods of time, depth perception and peripheral vision, interacting with the general public, dealing with stress, decision making, and no overhead reaching with the left upper extremity, exposure to cold, dampness or

temperature extremes, retained the residual functional capacity to work as a table worker, a hand tool sealer, and surveillance monitor.  AR 59-64.  In response to the ALJ's further questioning, VE Seifert testified that Plaintiff would be unable to perform any substantial gainful activity within the national economy if additionally limited in the ability to work within a specified schedule, occasionally unable to complete a normal work day or work week because of pain, occasional limitations in her ability to respond to changes in a work setting or to work in close proximity to others without being distracted.  AR at 64-65.

## DISCUSSION

**1.    Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 month."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more

than a mere scintilla.  It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Id.*  It is not, however, the district court's

function to make a *de novo* determination as to whether the claimant is disabled; rather,

"the reviewing court is required to examine the entire record, including contradictory

evidence and evidence from which conflicting inferences can be drawn" to determine

whether the SSA's findings are supported by substantial evidence. *Id.* "Congress has

instructed . . . that the factual findings of the Secretary,[5] if supported by substantial

evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## 2.    Disability Determination

The applicable regulations set forth a five-step analysis the Commissioner must

follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and

416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*,

675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is

engaged in substantial gainful activity during the period for which the benefits are

claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  If the claimant is engaged in such

activity, the inquiry ceases and the claimant is not eligible for disability benefits. *Id.*

Next to be determined is whether the applicant has a severe impairment which

significantly limits the physical or mental ability to do basic work activities, as defined in

the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Absent such an

impairment, the applicant is not eligible for disability benefits. *Id.*  Third, if there is an

impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of
the Secretary of Health and Human Services in Social Security cases was transferred to the
Commissioner of Social Security, effective March 31, 1995.

P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement,[6] there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience. 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity," which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"). [7]  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R.

---

[6] The duration requirement mandates the impairment must last or be expected to last for at least a continuous twelve-month period.  20 C.F.R. §§ 404.1509 and 416.909.

[7] "Past relevant work" or "PRW" is defined as work the claimant performed within the past 15 years as substantial gainful activity, for a sufficient period of time for the claimant to learn how to perform the work. 20 C.F.R. §§ 404.1560(b)(1), 404.1565, and 416.960(b).  Whether past work qualifies as relevant is determined either as the claimant actually performed it, or as the work generally is performed in the national economy.  *Id.*

§§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found Plaintiff meets the Act's insured status requirement through December 31, 2013, AR at 19, Plaintiff did not engage in substantial gainful activity since February 26, 2011, her alleged disability onset date, *id.* at 20, Plaintiff suffers from the severe impairments of status post C5-6 discectomy with artificial disc replacement, discogenic cervical spine, occipital headaches, status post two left shoulder arthroscopies, left shoulder impingement syndrome, osteoarthritis of the left knee, macular hold in the right eye, anxiety, and adjustment disorder with depressed mood, *id.* at 20, but that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in Appendix 1. *Id.* at 20-22. The ALJ found that Plaintiff retains the residual functional capacity to perform a reduced range of sedentary work with limitations including, during the course of an eight-hour workday, sitting up to six hours, and standing or walking up to two hours, lifting no more than five pounds, no working in area of unprotected heights, or heavy, moving, or dangerous machinery, occasional limitations to bending, climbing, stooping, squatting, kneeling, and balancing, no overhead reaching with left upper extremity, no climbing ropes, ladders, or scaffolds, occasional limitations as to reaching in all directions, other than overhead reaching, with the left upper extremity, occasionally limited in her abilities to handle, finger, feel and push and pull with the upper extremities, maintain attention and concentration for extended periods, depth perception and peripheral vision, interact appropriately with the general public, deal with stress, and make decisions, and was unable to work in areas

where Plaintiff would be exposed to cold, dampness or temperature extremes . *Id.* at 22-31.  Accordingly, the ALJ determined Plaintiff is not disabled as defined under the Act.  *Id.* at 32.

Plaintiff raises several challenges to the ALJ's determination, including that the ALJ erred in selectively rejecting a portion of the opinion of Plaintiff's treating orthopedic surgeon, Dr. Huckell, Plaintiff's Memorandum at 15-18, and the ALJ failed to provide a detailed credibility analysis, *id.* at 18-22.  *Id.* at 17-20.  Plaintiff maintains these errors require remand either for calculation of benefits or for further administrative proceedings.  *Id.* at 23.  Defendant, in contrast, argues substantial evidence supports the ALJ's evaluation of Dr. Huckell's opinions, Defendant's Memorandum at 25-30, and the ALJ reasonably evaluated Plaintiff's subjective statements about the limiting effects of her impairments.  *Id.* at 30-33.  In further support of her motion for judgment on the pleadings, Plaintiff reiterates that the ALJ failed to provide good reasons for rejecting Dr. Huckell's repeated opinion that Plaintiff could not sit, stand or walk for more than two hours at a time, Plaintiff's Reply at 1-4, and the ALJ failed to provide a detailed credibility determination.  *Id.* at 4-5.  Because no challenge is raised to the first, second and third steps of the five-part analysis, the court does not address them, but limits its review to only the fourth and fifth steps, *i.e.*, whether the ALJ's determination that Plaintiff retains the residual functional capacity for substantial gainful employment that exists in the national economy is supported by substantial evidence in the record.

## A.    Fourth Step

Once an ALJ finds a disability claimant is unable to meet the criteria for disability under any impairment listed in Appendix 1, the next step is to consider the applicant's

"residual functional capacity," *i.e.*, the ability to perform physical or mental work activities on a sustained basis despite limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any PRW. 20 C.F.R. §§ 404.1520(e) and 416.920(e). Disability benefits will be denied if the applicant remains capable of performing PRW. *Id.* Here, after determining Plaintiff did not meet the criteria for disability under the Listing of Impairments, ALJ proceeded to the fourth step of the five-step analysis and determined Plaintiff retained the residual functional capacity ("RFC"), to perform a reduced range of sedentary work.[8] *Id.* at 22-31.

Plaintiff argument in support of judgment on the pleadings is that the ALJ's rejection of Dr. Huckell's opinion was accompanied by "a heightened duty of explanation" as to why the ALJ gave more weight to the opinion of Dr. Balderman, who was not Plaintiff's treating physician, and examined Plaintiff on only one occasion in connection with an agency review examination. Plaintiff's Memorandum at 17-18. In opposition, Defendant maintains the ALJ's determination that Plaintiff, despite several severe impairments, remains capable of performing a reduced range of sedentary work, is supported by substantial evidence in the record, especially given that the ALJ did not completely reject Dr. Huckell's opinions, but only those portions assessing postural limitations, which findings were inconsistent with those of Dr. Balderman. Defendants'

---

[8] "Sedentary" work, as defined under the applicable regulations,

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carryout job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

Memorandum at 25-30.  In further support of judgment on the pleadings, Plaintiff

maintains the ALJ violated the treating physician's rule by giving "only 'some but not

great' weight to Dr. Huckell's opinion that Plaintiff could only sit, stand and walk for [no]

more than two hours at one time due to cervical disc herniation and cervical radiculitis."

Plaintiff's Reply at 2-4.

Pursuant to the so-called "treating physician's rule," the SSA gives "deference to

the views of the physician who has engaged in the primary treatment of the claimant."

*Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting *Green-Younger v.

Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (internal quotation marks omitted).  In

particular, "the opinion of a claimant's treating physician as to the nature and severity of

the impairment is given 'controlling weight' so long as it 'is well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

other substantial evidence in [the] case record.'"  *Burgess v. Astrue*, 537 F.3d 117, 128

(2d Cir. 2008) (quoting 20 C.F.R. 404.1527(d)(2)) (brackets in original).[9]  Circumstances

where a physician's opinion does not qualify as "substantial" include whether only

deficits of which the claimant was not complaining were addressed, a consulting

physician did not examine the claimant but gave an opinion entirely based on an

evaluation by a non-physician reporting inconsistent results, and where the description

of the claimant's impairments is so vague as to be useless in evaluating the claimant's

residual functional capacity.  *Id.* at 128-29 (citing cases).  In the instant case, a plain

reading of the Hearing Decision establishes that Plaintiff's assertion, Plaintiff's Reply at

2, that ALJ violated the treating physician's rule by rejecting that portion of Dr. Huckell's

---

[9] Unless otherwise indicated, bracketed material has been added).

opinion that Plaintiff could sit, stand or walk for no more than two hours at any time, is without merit.

Specifically, Dr. Huckell repeatedly opined that Plaintiff "should not sit, stand or walk more than two hours *at one time*. She should avoid lifting over 35 lbs. She should avoid bending, stooping, reaching, climbing, balancing and over the shoulder work." AR at 638 (October 6, 2009), 643 (January 5, 2010), 647 (July 6, 2010), 651 (October 5, 2010), 655-56 (April 5, 2011), 812 (May 12, 2011), 817 (June 30, 2011), 821 (December 1, 2011), 1021-22 (January 28, 2013), 1243 (October 10, 2013), and 1255-56 (October 24, 2013). Accordingly, the ALJ determination that in an eight-hour work day, Plaintiff could sit up to six hours and stand or walk for two hours is not inconsistent with Dr. Huckell's limiting Plaintiff to sitting, standing or walking for only two hours *at a time*; rather, the ALJ's finding would allow Plaintiff to sit for two hours, stand or walk for an hour, sit for another two hours, stand or walk for an hour, and finish the eight-hour day by sitting for two hours, for a total of eight hours, without sitting, standing or walking for more than two hours at a time. These restrictions were included in the hypothetical work situations the ALJ presented to VE Seifter, AR at 60-62, such that the ALJ's determination that Plaintiff is not disabled is consistent with Dr. Huckell's repeated opinion also included that "[i]f these restrictions can be met then she could return to the work force." AR at 38, 643, 647, 651, 655-56, 812, 817, 821, 1021-22, 1243, and 1255-56. Moreover, despite repeatedly opining as to the limitations Plaintiff's impairments posed to her ability to work, Dr. Huckell also repeatedly characterized Plaintiff as having "a temporary partial marked disability" which precluded Plaintiff from resuming her work as a CNA, but cleared Plaintiff to attend VESID program for retraining. AR at 638, 643,

647, 651, 655-56, 812, 817, 821, and 1021.  Accordingly, the ALJ's determination is

consistent with Dr. Huckell's opinion as Plaintiff's treating physician and, thus, did not

violate the treating physician's rule.

Accordingly, the ALJ did not err at the Fourth Step of the analysis.

### C.    Fifth Step

The ALJ's determination that Plaintiff was not capable of performing her PRW

required consideration of the fifth step of the analysis, *i.e.*, whether given the applicant's

age, education, and past work experience, the applicant "retains a residual functional

capacity to perform alternative substantial gainful work which exists in the national

economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and

citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  Plaintiff argument in

support of judgment on the pleadings at the fifth step of the analysis is that the ALJ

failed to provide the required detailed credibility analysis.  Plaintiff's Memorandum at 19-

22.  In opposition, Defendant argues the ALJ's evaluation of Plaintiff's subjective

statements regarding the limiting effects of her impairments was reasonable.

Defendant's Memorandum at 30-34.  In further support of judgment on the pleadings,

Plaintiff repeats her assertion that the ALJ did not provide a detailed credibility

determination.  Plaintiff's Reply at 4-5.

With regard to Plaintiff's argument, Plaintiff's Memorandum at 19-22, that the ALJ

failed to provide the requisite detailed analysis of Plaintiff's testimony about her

subjective complaints, Plaintiff maintains the ALJ's determination was required to

contain specific reasons for his credibility finding especially given Plaintiff's subjective

complaints of pain are supported by objective medical evidence.  In opposition,

Defendant argues the ALJ was not required to accept Plaintiff's subjective complaints of pain without question, but had discretion to weigh the credibility of such claims in light of all the evidence in the record.  Defendant's Memorandum at 30-33.  In further support of judgment on the pleadings, Plaintiff maintains that despite summarizing Plaintiff's testimony and her medical records, the ALJ provided no link between the two.  Plaintiff's Reply at 4-5.

Although an ALJ "is required to take the claimant's reports of pain and other limitations into account," 20 C.F.R. § 416.929, the ALJ "is 'not required to accept the claimant's subjective complaints without question.'"  *Campbell v. Astrue*, 465 Fed.Appx.4, 7 (2d Cir. Jan. 6, 2012) (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)).  The ALJ is permitted to exercise discretion in weighing the credibility of the claimant's testimony against other evidence in the record.  *Id.*  This is done according to a two-step process.  *Id.*; 20 C.F.R. § 404.1529(a), (c)(1); Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 (S.S.A. July 2, 1996).

First, "'the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged.'"  *Campbell*, 465 Fed.Appx. at 7 (quoting *Grenier*, 606 F.3d at 49).  "If so, the ALJ must then consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record.'"  *Id.* (internal quotation marks omitted; alteration in *Genier* ).  "For purposes of our review, however, we have long held that '[i]t is the function of the [Commissioner], not ourselves, ... to appraise the credibility of witnesses, including the claimant.'"  *Id.* (quoting *Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d.Cir.1983)

(alteration in *Carroll*).  In the instant case, substantial evidence supports the ALJ's credibility determination.

In particular, the ALJ found Plaintiff's reported subjective symptoms reasonably could be attributed to Plaintiff's medically determinable impairments, although not to the extent alleged.  AR at 23.  The ALJ based this determination on "objective medical evidence, medical opinions, third party statements, prior work history, daily activities, precipitating and aggravating factors, the type, dosage, effectiveness and side effects of medication treatment other than medication, and other measures taken by the claimant to relieve pair or other symptoms pursuant to 20 C.F.R. 404.1529(c)."  *Id.*  The ALJ then references the numerous objective medical findings and medical opinions of Plaintiff's treating physicians and other treating sources, including mental health sources, including that although Plaintiff's injuries sustained in the accident rendered her permanently, partially disables such that it was not expected that Plaintiff could ever return to work as a CNA, Plaintiff was pursuing vocational rehabilitation in which Plaintiff was eager to participate, was regularly advised to increase her activity levels, and had positive results from her various surgeries.  AR at 23-31.  Despite some vision and mental impairments, the record is devoid of any indication that any treating medical source considered such impairments an impediment to employment.  *Id.*

Further, insofar as Plaintiff, in support of her argument, references several cases from this court, including *Cole v. Colvin*, 2015 WL 9463200 (W.D.N.Y. Dec. 28, 2015), and *Spear v. Astrue*, 2014 WL 4924015 (W.D.N.Y. Sept. 30, 2014), Plaintiff's Memorandum at 19-20; Plaintiff's Reply at 4, as well as *Bowen v. Berryhill*, 2017 WL 1159729 (W.D.N.Y. Mar. 29, 2017), Plaintiff's Reply at 4-5, such cases are inapposite.

In particular, in *Cole*, this court required the ALJ's consideration of the credibility of plaintiff's subjective complaints of pain, fatigue, depression and anxiety "in light of the factors required by the regulations," rather than "simply recit[ing] the medical evidence in the record without any meaningful analysis of how the medical evidence detracted from Plaintiff's credibility." *Cole*, 2015 WL 9463200, at * 4.  In *Spear*, this court concluded the ALJ, in evaluating the plaintiff's credibility regarding his complaints of pain, committed legal error by failing to explain his credibility determination with sufficient where "[i]n essence, the ALJ merely recited the record evidence, but did not adequately explain why he concluded that [the plaintiff]'s complaints of debilitating pain were not credible." *Spear*, 2014 WL 4924015, at * 20 (citing *Norman v. Astrue*, 912 F.Supp.2d 33, 44 (S.D.N.Y. 2012)).  More recently, this court found the ALJ's credibility determination conclusory and insufficient where the ALJ stated only that after carefully considering the evidence, the record established the plaintiff's medically determinable impairments reasonably could be expected to cause the subjective symptoms as alleged, but the plaintiff's statements regarding the intensity, persistence and limiting effects of such symptoms were not entirely credible to the extent alleged.  *Bowen v. Berryhill*, 2017 WL 1159729 (W.D.N.Y. Mar. 29, 2017).  The ALJ offered no further explanation as to why the plaintiff was found not credible.  *Id.*  These three cases are, however, distinguishable from the instant case because, as discussed above, here the ALJ differentiated between the medical opinions of Plaintiff's treating sources and Plaintiff's subjective complaints.

Because substantial evidence in the record establishes Plaintiff remained capable of performing a reduced range of sedentary work, for which VE Seifert

identified several positions Plaintiff, despite her limitations, could perform, the ALJ's determination should be upheld.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 13) should be DENIED; Defendant's request for judgment on the pleadings should be GRANTED.  The Clerk of Court should be directed to close the file.

Respectfully submitted,


/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     May 22nd, 2018
                   Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>**

*Thomas v. Arn*,  474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*,  892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*,  838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      May <u>22nd</u>, 2018
               Buffalo, New York